IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN E. EBERHARDT, | |
| Plaintiff, | Case No. 1: 20-cv-1171 |
| v. | |
| VILLAGE OF TINLEY PARK, et al., | Hon. Charles R. Norgle |
| Defendants. | |

## ORDER

As the well-developed law in this Circuit requires, the Court has decided Defendant Patrick J. Walsh's motion for sanctions with the utmost care and caution. Following that standard, the Court grants the motion [153] and orders Plaintiff Stephen E. Eberhardt to pay Walsh $26,951.22 in attorneys' fees for violating Rule 11 of the Federal Rules of Civil Procedure.

## STATEMENT

Plaintiff Stephen E. Eberhardt ("Eberhardt") sued Defendant Patrick J. Walsh ("Walsh") over the Village of Tinley Park's ("the Village") appointment of Walsh's law firm, Walsh Law Group, P.C., as village attorney. Dkt. 117 ¶¶ 199-215. (Counts XV and XVI). After the Court dismissed Counts XV and XVI, Walsh moved for sanctions against Eberhardt for reasonable attorney fees and costs pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. Dkt. 153. Walsh's motion for sanctions is granted pursuant to Rule 11 because Eberhardt's frivolous claims against Walsh were brought with inadequate investigation to the relevant law and facts. Additionally, Eberhart lacked good faith, bringing his claims for the improper purpose of being a nuisance to the Village and its officials. The Court decreases the amount sought by ten percent

1

(10%) because the fee petition is vague as to the reasonableness of certain hours expended by Walsh and his attorney in defending this matter.

### Background

This is the latest battle in Eberhardt's crusade against the Village. See, *e.g.*, Eberhardt v. Vill. of Tinley Park, No. 20-cv-3269, Dkt. 56 (N.D. Ill. November 9, 2020) (Feinerman, J.) (dismissing 66-page, 19-count amended complaint as duplicative of this matter). Here, among his many grievances, Eberhardt, an attorney representing himself *pro se*, objected to the Village's appointment of Walsh's law firm, Walsh Law Group, P.C., as outside counsel to the Village. Dkt. 117 ¶¶ 199-215 (Counts XV and XVI); Dkt. 1 ¶¶ 557-564 (Counts XVIII and XIX). Eberhardt sued "Patrick J. Walsh, d/b/a The Walsh Law Group P.C., . . . in his individual capacity and as the principle [sic] of 'The Walsh Law Group P.C.'" Id. ¶ 16. Eberhardt falsely claimed "Walsh's purported appointment on July 16, 2019 was not made by the Mayor with the advice and consent of the Village Board as mandated by Illinois law and Village Ordinance." Id. ¶¶ 47, 200-201. Rather, the Village's Purchasing Ordinance, 2017-O-012 ("the Purchasing Ordinance"), which Eberhardt omitted in both complaints, authorizes the Village Manager to engage the services of attorneys for matters not exceeding $20,000.00 without prior approval of the Village Board.

Eberhardt's amended complaint abandoned the original complaint's claims in Count XVIII and XIX that the appointment of Walsh Law Group, P.C. violated the Illinois Open Meetings Act. Compare Dkt. 1 ¶¶ 557-564, with Dkt. 117 ¶¶ 199-215. Eberhardt said the acts of the officials appointing Walsh's firm constituted "Official Misconduct" under 720 ILCS 5/33-3(a)(2). Id. ¶ 58. Walsh contends this was in response to him "educat[ing Eberhardt] that those claims were filed after the expiration of the relevant statutes of limitation." Dkt. 154 at 5. In Counts XV and XVI of his amended complaint, Eberhardt sought declaratory and injunctive relief including a prohibition

on Walsh performing services for the Village; reimbursement of any funds paid to Walsh or his firm; and punitive damages in the amount of $250,000.00. Dkt. 117 at 35-38.

Walsh moved to dismiss Eberhardt's claims against him. Dkt. 134. The Court granted that motion for lack of supplemental jurisdiction and for lack of standing. Dkt. 150. The Court also dismissed the remaining claims in the matter. Dkts. 136; 150. After dismissal, Walsh filed this motion seeking sanctions against Eberhardt pursuant to Rule 11 and 28 U.S.C. § 1927. Dkt. 153. Walsh's co-defendants have indicated an intent to also seek fees as a prevailing party under 42 U.S.C. § 1988. Dkt. 158.

### Rule 11 Standard

Rule 11 requires attorneys or unrepresented parties to certify that filings are not being presented for any improper purpose, that the legal contentions asserted in the filing are not frivolous, and that factual contentions have or are likely to have evidentiary support. Fed. R. Civ. P. 11(b). The purpose of Rule 11 is to deter baseless filings. Royce v. Michael R. Needle P.C., 950 F.3d 939, 957 (7th Cir. 2020). The main objective of Rule 11 is not to reward the victim of sanctionable conduct but to deter baseless filings and curb abuses. Harlyn Sales Corp. Profit Sharing Plan v. Inv. Portfolios-Gov't Plus Fund, 142 F.R.D. 671, 674 (N.D. Ill. 1992) (Norgle, J), aff'd sub nom., Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc., 9 F.3d 1263 (7th Cir. 1993). It is the Court's duty to enforce Rule 11. Kemper, 9 F.3d at 1269. The decision to impose Rule 11 sanctions is within the sound judgment of the district court. Cooney v. Casady, 735 F.3d 514, 523 (7th Cir. 2013). Under Rule 11 the court "shall" award sanctions if it finds a violation. Mars Steel Corp. v. Cont'l Bank N.A., 880 F.2d 928, 935 (7th Cir. 1989).

To determine whether an attorney's conduct violated Rule 11, the Court asks whether (1) a reasonable inquiry is made into both fact and law; (2) the pleading is submitted in good faith

3

without an intent to harass; (3) the legal theory asserted is objectively warranted by existing law or a good faith argument for extension or modification of the law; and (4) the complaint is well grounded in fact. Harlyn, 142 F.R.D. at 674 (citing Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1080 (7th Cir. 1987)). Rule 11 embodies both an objective and a subjective standard, prohibiting both "frivolousness on the objective side" and "bad faith on the subjective side." Mars Steel, 880 F.2d at 930. In determining whether Eberhardt's claims were objectively frivolous, the court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." Cuna Mut. Ins. Soc. v. Off. & Pro. Emps. Int'l Union, Loc. 39, 443 F.3d 556, 560 (7th Cir. 2006) (citations omitted). The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed. Corley v. Rosewood Care Ctr., Inc. of Peoria, 388 F.3d 990, 1014 (7th Cir. 2004). Rule 11 recognizes the doctrine of *res ipsa loquitur*, that is, the event sometimes speaks for itself. Mars Steel, 880 F.2d at 932 ("A lawyer who founds his suit on Plessy v. Ferguson, has revealed all we need to know about the reasonableness of the pre-filing inquiry."). *Pro se* status does not shelter plaintiffs from sanctions pursuant to Rule 11. Vukadinovich v. McCarthy, 901 F.2d 1439, 1445 (7th Cir. 1990).

## Discussion

A review of the docket and associated pleadings shows Eberhardt violated his Rule 11 obligations. Eberhardt did not conduct a reasonable inquiry into the law prior to filing his complaint and amended complaint where he neglected to cite a purchasing ordinance that negated his claims and where he failed to allege basic facts establishing this Court's subject matter jurisdiction, including his standing to pursue his claims against Walsh. Or worse, he did conduct a reasonable inquiry and proceeded with his baseless claims anyways. Either way, the legal theories he asserted were not objectively warranted by existing law or a good faith argument for

its extension. Rather, it is clear from his history with the Village and his actions in this case that his pleadings evince an intent to harass the Village and were not submitted in good faith. Because Eberhardt violated Rule 11, the Court orders sanctions against him in the form of attorneys' fees. Due to the vagueness of certain time entries mentioned in the fee petition, the Court awards ninety percent (90%) of the amount sought by Walsh.

### A. Eberhardt's Claims Against Walsh Were Objectively Frivolous.

The allegedly unlawful appointment of Walsh's firm as Village attorney is the basis of Eberhardt complaints against Walsh. Dkt. 117 ¶¶ 44-60. The frivolity of Eberhardt's claims is evident in multiple ways. First, Eberhardt failed to cite a Village ordinance, which negates his claims, or to argue its inapplicability. Second, Eberhardt brought those claims in this Court despite the Court lacking subject matter jurisdiction. Finally, Eberhardt improperly sued Walsh for the actions of others. Reasonable inquiry before filing the complaint would have revealed these shortcomings. Eberhardt knew or should have known about these fatal weaknesses. For these reasons, Eberhardt's claims against Walsh were objectively frivolous.

According to Eberhardt, "any regular appointment of an attorney for the Defendant Village must be done by the corporate authorities, that is, by the Mayor with the advice and consent of the Village Board." Id. ¶ 200. Eberhardt claims the appointment of Walsh's firm was done knowingly and intentionally in violation of Illinois law and Village Ordinance. Id. ¶¶ 203-204; 207-209. Eberhardt initially claimed this was a violation of the Open Meetings Act, 5 ILCS 120/1, *et seq.* Eberhardt amended his complaint saying those acts constituted "Official Misconduct," under 720 ILCS 5/33-3(a)(2). Id. ¶ 58. These allegations are false. The Village's Purchasing Ordinance, which Eberhardt does not mention in either complaint, authorizes the Village Manager to engage the services of attorneys for matters not exceeding $20,000.00 without prior approval of the

5

Village Board. 2017-O-012. Eberhardt failed to cite the Purchasing Ordinance and does not allege anything indicating its inapplicability.

Eberhardt brought this action for violations of, *inter alia*, Village ordinances. Dkt 117 ¶¶ 1, 4, 30, 32, 33, 35, 47, 57, 133, 201, 203, 207-210. In Counts I-IV, Eberhardt sought to have a different ordinance, Ordinance 2019-O-077, declared unlawful and unconstitutional. Dkt. 117 at 10-17. Walsh contends that Eberhardt "concealed" the Purchasing Ordinance from the Court. Dkt. 154 at 5. Eberhardt, in his response to this motion, claims he was unaware of the Purchasing Ordinance. Dkt. 156 at 12; see McGreal v. Village of Orland Park, 928 F.3d 556, 560 (7th Cir. 2019) (noting that Rule 11 leaves no room for an "empty head, pure heart" defense). This is not true. Walsh's August 5, 2020 notice, which predated the amended complaint, brought the Purchasing Ordinance to Eberhardt's attention. Dkt. 153, Ex. F; Dkt. 117. Eberhardt contends the Purchasing Ordinance is subject to attack as unlawful because it "directly conflicts with provisions of State law and other local Ordinances." Dkt. 156 at 12. Eberhardt does not elaborate this contention, neglecting to say with which laws and ordinances it conflicts.

Either Eberhardt did not investigate the substantive law to determine whether it supported his claims, or he did investigate and, as Walsh contends, actively concealed the existence of the Purchasing Ordinance from the Court. Eberhardt's extensive complaints about violations of Village ordinances and his efforts to invalidate another Village ordinance at least demonstrate his familiarity with the Village's municipal code. Moreover, Eberhardt, a licensed attorney, has been engaged in extensive litigation with the Village in separate matters since 2014. He has had 8 years of expertise and familiarity with Village ordinances. Even assuming Eberhardt omitted the Purchasing Ordinance from the original complaint because he was unaware of its existence and/or applicability, Walsh informed Eberhardt of the Purchasing Ordinance as early as August 5, 2020.

6

Dkt. 153, Ex. F. Yet, Eberhardt persisted. The Purchasing Ordinance is not complex, it is not open to interpretation, and its applicability is obvious. If there is a good-faith argument for its inapplicability or modification, Eberhardt has not presented it. A reasonable inquiry, like one of his 150+ FOIA requests, certainly would have revealed the Purchasing Ordinance's existence and applicability. Eberhardt knew or should have known the Purchasing Ordinance negated his claims when he filed his initial complaint. Prior to filing his amended complaint, he was fully aware of the existence of the Purchasing Ordinance, and therefore the frivolity of his claims.

Additionally, the Court dismissed Eberhardt's claims relating to Walsh for lack of subject matter jurisdiction concluding that it lacked supplemental jurisdiction and that Eberhardt lacked standing to bring those claims. Dkt. 150. The Court noted supplemental jurisdiction is available over claims which share a common nucleus of operative fact—at least a loose factual connection—with the claims over which the Court has original jurisdiction. Dkt. 150 at 12 (citing Curry v. Revolution Labs., LLC, 949 F.3d 385, 389 n. 3 (7th Cir. 2020)). The Court concluded that Eberhardt's claims in Counts XV and XVI were completely unrelated to his federal claims, noting Eberhardt's "complaint as to Walsh is limited to the circumstances of his appointment, which involves no connection with [Eberhardt's] federal claims whatsoever." Id. The Court also concluded that Eberhardt lacked standing to pursue the Walsh claims because he did not allege in his amended complaint that he has suffered any injury relevant to those claims. Id. at 13-18. The Court noted Eberhardt only alleged the circumstances of Walsh's appointment and nothing as to how he was injured by Walsh's appointment. Id. at 14 (citing Bazile v. Fin. Sys. of Green Bay, Inc., 983 F.3d 274, 2798 (7th Cir. 2020)). The Court concluded Eberhardt failed to allege his particularized interest in his claims challenging Walsh's appointment and, therefore, he lacked standing to pursue those claims. Id. at 16.

7

Given his background as an attorney and his extensive litigation history with the Village, Eberhardt knew or should have known that he needed to establish at least a loose factual connection between his state-law claims and his federal claims to assert supplemental jurisdiction. Also, he knew or should have known that he needed to at least allege he was injured by the complained-of conduct. He did neither. These fundamental flaws in Eberhardt's claims further demonstrate Eberhardt failed to conduct a reasonable inquiry into the relevant law when he brought these claims in federal court. See Butler v. Fed. Deposit Ins. Corp., No. 11 CV 6692, 2014 WL 843605, at *3 (N.D. Ill. Feb. 28, 2014) (Norgle, J.) (issuing Rule 11 sanctions against party who knew or should have known that the Court lacked subject matter jurisdiction and was the wrong venue.).

Even more fundamentally, Eberhardt sued Walsh individually and as the principal of The Walsh Law Group P.C., without any good faith basis for Walsh's liability in either capacity. Eberhardt alleged only the following concerning Walsh's actions: "Walsh consulted and counseled Defendants Glotz and Brady regarding the Resolution and what to do when Mayor Vandenberg refused to sign said Resolution" and "Walsh knows that the Mayor and Board of Trustees must act together in appointing legal counsel for the Village." Dkt. 117 ¶¶ 212-213. Eberhardt alleges nothing else done by Walsh or his firm. Yet he concludes Walsh conspired with other defendants to effectuate his firm's appointment. Id. ¶ 4. To have standing to sue under Article III, a plaintiff must have (1) suffered a concrete "injury in fact," (2) that is "fairly traceable" to the defendant's conduct and not "the result of the independent action of some third party," and (3) that is likely to be "redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Eberhardt barely alleges any conduct by Walsh, and none that is "fairly traceable" to any injury. He alleges no action by Walsh Law Group, P.C. at all. Injuries are not fairly traceable when they are the result of "independent action of some third party not before the court." Texas Indep.

8

Producers & Royalty Owners Ass'n v. EPA, 410 F.3d 964, 972 (7th Cir. 2005). Eberhardt complained about an appointment which Walsh had nothing to do with; he sued Walsh because third parties hired Walsh. He plainly did not have standing to do so and he must have known as much when he filed his complaint.

After an objective inquiry, the Court finds that Eberhard knew or should have known that his position was groundless. Cuna Mut. Ins. Soc., 443 F.3d at 560. Eberhardt sued Walsh, alleging little action and no injury, for violations of Village ordinances that were not violations at all. He cannot hide behind his *pro se* status. Vukadinovich, 901 F.2d at 1445. Eberhardt's claims against Walsh were (a) not brought with a reasonable inquiry into both fact and law; (b) not objectively warranted by existing law or a good faith argument for its extension; and (c) maintained after being informed of their false and frivolous nature. His claims were objectively frivolous.

**B. Eberhardt Acted in Bad Faith, Bringing this Matter For an Improper Purpose.**

Eberhardt's actions speak for themselves, and they scream bad faith. Mars Steel, 880 F.2d at 932. Eberhardt's initial 19-count, 102-page complaint named 11 defendants and contained 26 exhibits, totaling an additional 384 pages. Dkt. 1. Eberhardt culled his amended complaint to 39 pages with an additional 13 pages of exhibits. Dkt. 117. During the year and a half life span of this case, Eberhardt filed sixteen motions, among them: three motions for preliminary injunction; two motions for temporary restraining orders; two motions for leave to file an amended complaint; a motion to dismiss count XVII of his own complaint; a motion to consolidate the duplicative case before Judge Feinerman; a motion for default judgment; a motion for sanctions, and others. See Dkts. 24, 31, 58, 60, 62, 67, 78, 87, 89, 90, 105, 107, 110, 113, 118, 125. Prior to the termination of this case, the Court granted only two of these motions—the motion to dismiss his own count and a motion for leave to file a surreply. Dkt. 60, 105.

9

This voluminous and burdensome litigation is one of Eberhardt's many against the Village and its officials. Walsh's Exhibit A lists 25 lawsuits, 14 ethics complaints, and over 150 Freedom of Information Act ("FOIA") requests, each brought by Eberhardt since 2014 against the Village and/or its officials. Dkt. 153, Ex. A. Eberhardt concedes his participation in these matters, only disputing Walsh's "frivolous characterizations" of the outcome of these matters. Dkt. 156 at 8-10. Eberhardt even notes that Walsh omitted additional of his disputes with the Village, specifically, his "Requests for Review" of FOIA production to the Illinois Attorney General. Id. at 10. Walsh also highlights Eberhardt's ARDC complaints against Village attorneys, noting the ARDC declined to act on any of his complaints. Dkt. 154 at 1-3.

Eberhardt was warned his conduct was sanctionable, but he persisted. Walsh served three Rule 11 notices on Eberhardt, identifying the deficiencies in his claims, which Eberhardt ignored. Dkt. 153, Ex. F. The April 16, 2020 notice demanded dismissal of claims brought pursuant to the Open Meetings Act against Walsh in the initial complaint because they were filed beyond the statute of limitations. Id. The August 5, 2020 notice, which was sent prior to the filing of the amended complaint, attached a copy of Walsh's motion to dismiss the original complaint and raised the statute of limitations, the Purchasing Ordinance, and ratification arguments. Id. Despite being informed of the Purchasing Ordinance, Eberhardt filed his amended complaint maintaining his claims against Walsh. He even sought the arrest and criminal prosecution of Defendant Michael Glotz for official misconduct for signing the resolution ratifying the Village's agreement with Walsh Law Group, P.C., with full knowledge of the Purchasing Ordinance. Dkt. 153, Ex. E. The March 31, 2021 notice raised the same deficiencies as those in the original complaint and warned that Walsh would file the instant motion if Eberhardt did not voluntarily dismiss the case as to Walsh. Id. Eberhardt ignored these warnings and others.

On September 28, 2018, Cook County Judge John J. Ehrlich, while dismissing a different Eberhardt case against Village officials, warned Eberhardt that he "had a duty before filing this complaint to investigate the substantive law and determine whether it supported his claims" and that "he runs the very real risk that this or other courts may [order sanctions]." Dkt. 153, Ex. C. Four years later on September 2, 2022, the Court admonished the parties that "Rule 11 requires counsel to study the law before representing its contents to a federal court and that an empty head but a pure heart is no defense." Dkt. 150 at 3-4 (citing McGreal, 928 F.3d at 560). The Court noted the clear incivility between the parties, reminding all to conduct themselves professionally and civilly. See Dkts. 116, 150. ("[Plaintiff] is . . . seemingly a perpetual thorn in the side[] . . . the Village of Tinley Park[.]"); ("[Plaintiff] has spilled much ink in his disputes with the Village of Tinley Park. Too much."). Eberhardt's 133-page response to this motion and his pursuit of the claims against Walsh in yet another lawsuit in the Circuit Court of Cook County, Eberhardt v. Village of Tinley Park, et al., 2021-L-065042, demonstrate that incivility persists.

The lengths Eberhardt has gone in this fight (and his many others) beg the question—why? For what other reason than vexatiousness would someone go to such lengths? Walsh attaches an affidavit of Village Attorney Patrick Connelly who attests that Eberhardt represented to him, after the Village denied Eberhardt employment, that Eberhardt "would make sure the Village spent every dollar that he felt would have been paid to him via his employment with the Village on fees to defend requests for review and other litigation he planned to file in retaliation for not being hired by the Village." Dkt. 153, Ex. B. Eberhardt claims this attestation is false. Dkt. 156 at 10. Regardless, whether he made that promise or not, Eberhardt's litigation history demonstrates an attempt to do just that. These matters did not occur during "proceedings" in a "case" before this Court for purposes of § 1927. Bender v. Freed, 436 F.3d 747, 751 (7th Cir. 2006). However,

11

outcomes aside, they do cast a dark shadow on Eberhardt's claims of good faith for purposes of Rule 11 by demonstrating a pattern of behavior emblematic of one with an axe to grind. The Courts are not his grindstone. Eberhardt clearly brought this action for the improper purpose of being a nuisance to the Village and its officials, including Walsh. Sanctions are necessary to deter him from similar conduct in the future.

### C. Sanctions Pursuant to 28 U.S.C. § 1927 are not Appropriate.

Having found Eberhardt violated Rule 11, the Court must impose sanctions on him. Consequently, the Court need not address whether sanctions pursuant to § 1927 are applicable. Furthermore § 1927 authorizes the court to award "the excess costs, expenses, and attorneys' fees reasonably incurred because of" a lawyer's vexatious conduct. 28 U.S.C. § 1927. But § 1927 applies to "any attorney or other person admitted to conduct cases in any court of the United States." Id.; Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 799 (7th Cir. 2013). (§ 1927 asks whether "counsel acted recklessly, ... raised baseless claims despite notice of the frivolous nature of these claims, or ... otherwise showed indifference to statutes, rules, or court orders."). While Eberhardt is an attorney, he brought this action *pro se*. So, it is unclear whether § 1927 applies. Regardless, the Court has already sanctioned Eberhardt under Rule 11.

### D. Reasonable Sanctions to Deter Future Conduct

Walsh seeks $29,945.80 in attorneys' fees as a sanction against Eberhardt to deter him from filing future frivolous pleadings. Dkt. 154 at 15. Those fees are based on a reasonable hourly rate. However, there is some argument as to whether the number of hours claimed were reasonably expended. Accordingly, the Court reduces the total award by 10% of the amount sought.

Rule 11 "is not a fee-shifting measure—it provides only that a court may impose an 'appropriate sanction' for a violation of Rule 11(b)." Cooney, 735 F.3d at 523 (quoting

12

Fed.R.Civ.P. 11(c)(1)). Rule 11 "requires a court to ascertain the most modest sanction that will deter an offending attorney (and others) from further misconduct and then to set the sanction at that amount, regardless of the costs that the offending attorney's conduct has imposed on his opponents." Tate v. Ancell, 551 F. App'x 877, 895 (7th Cir. 2014). Rule 11 endorses the use of attorneys' fees as a sanction. Divane v. Krull Elec. Co., 200 F.3d 1020, 1030 (7th Cir. 1999). Attorneys' fees are calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party requesting the fee award bears the burden of substantiating, to the Court's satisfaction, the requested rate as well as the hours expended. McNabola v. Chicago Transit Auth., 10 F.3d 501, 518 (7th Cir. 1993).

Regarding the reasonable rate, Walsh submitted: (1) the 2015-2021 Laffey Matrix; (2) an affidavit from Joseph H. McMahon, Esq.; and (3) an affidavit from the undersigned to establish the prevailing market rate and that such rate is commensurate with Walsh's counsel's experience and the complexity of the defense. See Dkt. 153, Ex. J. The Court finds the Proposed Hourly Rate of $400.00 reasonable based upon market rates, experience, and the relative complexity of defending against Eberhardt's claims.

Regarding the hours expended, Walsh submitted a detailed spreadsheet outlining the time spent by Walsh's counsel. See Dkt. 153, Ex. J. At first glance, the hours worked and reflected in Exhibit I seem reasonable and necessary to defend Eberhardt's claims, especially considering the volumes of filings with which Eberhardt burdened Defendants and the Court. Eberhardt "may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." Mars Steel, 880 F.2d at 932. However, Eberhardt suggests that some of the time entries presented reflect work done by Walsh and his paralegal, rather than by his attorney. Dkt. 156 at 1 n.1 ("See *e.g.* Defendant's Exhibit I to the Memo at page 11/12 entries

of 09/28/21 to 09/30/21"). The Court examined those entries and they do not appear to list work done by Walsh or his paralegal. Yet, in his reply Walsh concedes he contributed to the preparation of the motion. Dkt. 157 at 3. When a fee petition is vague or inadequately documented as to the reasonableness of the hours expended, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage. Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000). The entries noted by Eberhardt are vague given Walsh's representation in his reply since it is unclear to what extent he contributed to preparation of the motion. Accordingly, the Court sanctions Eberhardt to deter future frivolous pleadings by awarding $26,951.22— a 10% reduction from the $29,945.80 sought—in attorneys' fees to Walsh.

**CONCLUSION**

Eberhardt, in his consumption of the Village's resources in pursuing these baseless claims, has also forced the Court to divert its scarce time and resources from litigants with serious disputes needing resolution. Eberhardt has ignored the warnings of the Circuit Court of Cook County, his adversaries, and this Court to cease his incivility. He did not heed those warnings. Instead, he pursued baseless claims for the improper purpose of being a burden and nuisance to the Village. The Court imposes sanctions to deter Eberhardt from future conduct of this nature.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 18, 2022

14